# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Terrance Sayles

**DEFENDANTS**
Iowa State Penitentiary and Iowa Department of Corrections

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: Lee
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Benjamin Roberson

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [ ] 442 Employment
- [ ] 443 Housing/Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PERSONAL INJURY**
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**PRISONER PETITIONS**
**Habeas Corpus:**
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

**Other:**
- [ ] 540 Mandamus & Other
- [x] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Prisoner Civil Rights

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: 11/15/2021

SIGNATURE OF ATTORNEY OF RECORD: *[signature]*

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

| | |
|---|---|
| Terrance Sayles<br><br>　　　Plaintiff,<br><br>vs.<br><br>Iowa State Penitentiary and Iowa Department of Corrections<br><br>　　　Defendants. | Case No. 3:21-cv-00095<br><br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

Plaintiff, Terrance Sayles, through undersigned Attorney, for his Complaint and Jury Demand states:

## I.　　JURISDICTION AND VENUE

1. This action is brought pursuant to 42 U.S.C. § 1983. Defendants, each of them acting under the color of state law, have deprived Plaintiff Terrance Sayles of rights secured by the United States Constitution and federal statutory law.

2. This action arises under the First, Eighth, and Fourteenth Amendments to the United States Constitution, Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq., Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc et seq.  Accordingly, this Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants maintain their principal offices within this district, in Des Moines, Iowa.

## II.  PARTIES

4. Plaintiff, Terrance Sayles, is a 31-year-old African American man incarcerated at the Iowa State Penitentiary (ISP). Plaintiff is currently confined to Long Term Restricted Housing (LTRH), phase one.

5. Plaintiff suffers from schizophrenia and intermittent explosive disorder, which were originally diagnosed by Dr. Deborah Garrelts, MD on or before July 25, 2016.  Dr. Garrelts prescribed Plaintiff olanzapine, 15mg, and hydroxyzine pamoate, 50mg, to treat these conditions.

6. Plaintiff's commitment date was February 26, 2010. Plaintiff's parole date was November 2, 2016. Plaintiff was detained in Jurisdiction outside of Iowa on May 2, 2018. Plaintiff was transferred to ISP on July 10, 2018. Plaintiff was transferred from ISP to Anamosa on August 14, 2018, where he remained until July 14, 2020.

7. Iowa State Penitentiary (ISP) is a maximum-security prison owned and operated by the Iowa Department of Corrections.

## III.  FACTUAL ALLEGATIONS

**A. Iowa State Penitentiary**

8. ISP is a secure facility for men operated by the Iowa Department of Corrections (the DOC) located at 2111 330th Avenue in Fort Madison, Lee County, Iowa.

9. ISP is the only maximum-security prison in Iowa.

10. In fiscal year 2020, ISP was responsible for $43,295,068.58 worth of appropriation from the DOC general appropriations fund. The average daily cost at ISP was $167.37, the second highest of all Iowa State Prisons, only behind the Iowa Medical Classification Center Correctional Facility. This is almost double the DOC Average Daily Cost for FY19 of $94.23.

11. Four housing units comprise ISP. Unit One has a maximum capacity of 232 inmates and houses tier one inmates, inmates in orientation, inmates in solitary confinement, inmates in administrative segregation, and inmates in the Long-Term Restrictive Housing program (LTRH). Unit Two has a maximum capacity of 224 inmates and houses tier two inmates. Unit Three has a maximum capacity of 256 inmates and houses tier three individuals. Unit Four has a maximum capacity of 120 inmates and houses inmates who require special medical care, inmates in lock-up and inmates in quarantine.

**B. Solitary Confinement of Inmates at Iowa State Penitentiary**

12. The solitary confinement ward of Unit One was specifically designed to foster maximum isolation. Plaintiff, and other inmates in the solitary confinement ward, are warehoused in a concrete cell 7' x 9'. Cells have a single door with a small viewing grate near the top of the cell and an opening for guards to push food through at the bottom. There are call buttons located in the cells. The call button turns on a light which is meant to attract the guards' attention. The guards have control of the lights and can turn them off if an inmate turns their light on. Inmates

must wait for a guard to come to their cell. The only other means of contacting guards in emergency or non-emergency situations is to yell at the guards.

13. Plaintiff, and other inmates in the solitary confinement ward, are confined to their cells for 23 hours a day with 1 hour for recreation. Cells in the solitary confinement unit are laid out as a steel door with a window, a window at the head of the bed for guards to peer in and a 3rd window at the back of the cell that looks outside. Cells contain a stainless-steel toilet, sink, desk, stool and a metal bed slab with a 4" mat on top and a small ventilator.

14. Inmates in solitary confinement are "afforded indoor and/or outdoor exercise outside their cell five days a week for one hour each day excluding holidays….[ISP] is not required to make up exercise time lost due to a holiday or severely inclement weather." IDOC Policy IO-HO-07. "Severely inclement weather" is undefined.

15. Other entertainment devices, such as television and radios, are suspended for the duration of an inmates' solitary confinement. Inmates in solitary confinement are allowed six (6) phone calls. Inmates in solitary confinement have no access to educational materials or programming, except at the discretion of the Committee. Inmates in solitary confinement have no opportunity for vocational training.

16. Inmates in solitary confinement have absolutely no access to group recreation, group education, group prayer, or group meals. Communication with other inmates occurs solely by shouting through viewing grates to other solitary inmates. Guards, however, have discretion to issue warning and punish any loud

communications as a rule violation, and guards routinely issue such warnings and punishments.

17. Plaintiff's, and other solitary inmates' communication with loved ones outside the facility is also subject to severe restrictions.

18. Inmates in solitary confinement are only permitted to make outgoing legal calls when there is a verified pending court action. "Personal calls are not routinely authorized unless otherwise directed by the Committee. Emergency telephone calls may be approved by the Unit Supervisor." IDOC Policy IO-HO-07.

19. Inmates in solitary confinement are allowed one 10-minute shower three times per week; inmates are expected to shave during this period as well. However, inmates in solitary confinement are not notified when these opportunities are to occur, and if the inmate is not prepared to shower when the guard passes his cell, the inmate loses his opportunity to bathe.

20. Whenever an inmate is moved from their cell, he is publicly strip-searched, handcuffed with his hands shackled to his waist or behind his back with a leash attached to the cuffs. Shackles and cuffs around ankles are also routinely employed by guards if inmates are leaving the unit.

21. "Privileges of offenders may be further restricted when abusive, disruptive, or violent behavior warrant further restriction for reasons of safety and security. All such restrictions, including the authorizing official, shall be logged into the Post Logbook. A record of the restriction shall be provided to the Associate Warden of Security and documented in ICON Generic Notes: Behavior Logs, or other

permanent record." IDOC Policy IO-HO-07. Inmates are not notified when a generic note is placed in their record; in effect, an inmates' privileges may be suspended without the inmates' knowledge, and without an opportunity for the inmate to grieve the suspension of their privileges.

22. These extreme conditions and restrictions on human contact are imposed on Plaintiff as a matter of official IDOC/ISP policy and have been approved or implemented by Defendants.

23. Defendants are directly responsible for these stark conditions, and for the degree to which the conditions are compounded by other punitive measures, including but not limited to, a pattern and practice of denial of medical/mental health care.

**C. Discipline Received by Plaintiff at Iowa State Penitentiary**

24. Plaintiff was transferred from Anamosa State Penitentiary on July 14, 2020, and immediately placed in quarantine and subsequently in solitary confinement. Plaintiff was in solitary confinement until November 2020. From November to December 9, 2020, Plaintiff was in Phase 0. On December 9, 2020, Plaintiff was transferred to solitary confinement until his release to LTRH on May 5, 2021. Plaintiff's solitary confinement lasted a total of 118 days, until his release to LTRH on May 5, 2021.

25. On July 14, 2020, Plaintiff was mourning the recent loss of his father and loss of his friend who was killed in February 2020. A captain denied Plaintiff prayer and Plaintiff retaliated. The captain then threatened to send Plaintiff to lock up.

a. *Solitary Confinement of Plaintiff*

26. Administrative Law Judge, Julie Medina (ALJ Medina) sentenced Plaintiff to solitary confinement on August 5, 2020, following a disciplinary hearing on July 31, 2020. ALJ Medina convicted Plaintiff of assault, possession of dangerous contraband, criminal or unlawful conduct, and obstructive/disruptive conduct, and she sentenced Plaintiff to 60 days of solitary confinement with credit for 23 days served and 30 additional days of solitary confinement.

27. On August 17, 2020, ALJ Paul Gauger (ALJ Gauger) sentenced Plaintiff to an additional 15 days of solitary confinement after Plaintiff allegedly used verbally abusive language in front of Sergeant J.D. Hawk.

28. On August 26, 2020, ALJ Gauger sentenced Plaintiff to an additional 15 days of solitary confinement after Plaintiff and his mother, Bertha Johnson, discussed possible legal action against prison administration during an authorized visit on July 31, 2020.

29. Also on August 26, 2020, ALJ Gauger sentenced Plaintiff to an additional 15 days of solitary confinement after Plaintiff barricaded himself in his cell on August 3, 2020.

30. On October 29, 2020, ALJ Gauger sentenced Plaintiff to an additional 30 days of solitary confinement after Corrections Officer Nico Ross allegedly found a sharp object in Plaintiff's possession while Plaintiff was in SSIP status for a cell extraction.

31. On January 15, 2021, ALJ Gauger sentenced Plaintiff to an additional 155 days of solitary confinement (with credit for 37 days served) for allegedly assaulting

corrections officers on December 9, 2020. ALJ Gauger also suspended Plaintiff's mail and visitation rights for 365 days, but the suspension of these rights was overturned on appeal.

32. On January 26, 2021, ALJ Gauger sentenced Plaintiff to an additional 30 days of solitary confinement after Plaintiff allegedly threw a stick of deodorant in the direction of Corrections Officer Tanner Bigger on December 17, 2020.

33. On April 12, 2021, ALJ Gauger sentenced Plaintiff to an additional 15 days of solitary confinement after Plaintiff allegedly verbally harassed Correctional Counselor Sean Atwater on March 23, 2021.

34. For the duration of Plaintiff's time in solitary confinement, Dr. Gregory Keller prescribed Plaintiff several medications, including ziprasidone, which is used to treat various symptoms of schizophrenia.

35. Despite Plaintiff's schizophrenia diagnosis and treatment, Plaintiff was never evaluated by a psychologist to determine his competency to undergo the disciplinary process, excepting the hearing before ALJ Gauger on July 31, 2020.

   b. *Loss of Time Earned*

36. In addition to the sentencing of Plaintiff to solitary confinement in the disciplinary hearings discussed in Paragraphs 26 – 35 above, the ALJs punished Plaintiff with loss of time earned.

37. On August 5, 2020, ALJ Gauger punished Plaintiff with a loss of 545 days earned time.

38. On August 17, 2020, ALJ Gauger punished Plaintiff with a loss of 8 days earned time.

39. In the two hearings on August 26, 2020, ALJ Gauger punished Plaintiff with a loss of 20 days earned time.

40. On October 29, 2020, ALJ Gauger punished Plaintiff with a loss of 30 days earned time.

41. On January 15, 2021, ALJ Gauger punished Plaintiff with a loss of 740 days earned time.

42. On January 26, 2021, ALJ Gauger punished Plaintiff with a loss of 90 days earned time.

43. On April 12, 2021, ALJ Gauger punished Plaintiff with a loss of 30 days earned time.

44. Between August 5, 2020, and April 12, 2021, Plaintiff was punished with a total loss of 1,463 days of earned time, or approximately 4 years. Plaintiff's original prison sentence was for 20 years.

45. Despite Plaintiff's schizophrenia diagnosis and treatment, Plaintiff was never evaluated by a psychologist to determine his competency to undergo the disciplinary process, excepting the hearing before ALJ Gauger on July 31, 2020.

### D. IDOC Standards for Discipline of Mentally Ill Individuals

46. IDOC and ISP maintain written policies dictating the procedure for disciplining individuals with mental illness. The IDOC policy relating to discipline of mentally ill individuals is numbered HSP-731.

47. Pursuant to IDOC's policy, a mentally ill inmate cannot receive discipline unless a psychologist evaluates the inmate "for their ability to participate in the disciplinary process taking into account their special needs status." Schizophrenia and major depressive disorder are mental illnesses requiring a psychological evaluation under this policy.

48. The policy requires the evaluating psychologist to have a face-to-face meeting with the inmate and evaluate certain factors, including the correlation between the inmate's behavior and the inmate's diagnosis/diagnoses.

49. Policy Number HSP-731: "Disciplinary segregation can also have significantly negative consequences in terms of a patient's mental status, particularly if they are mentally ill. The SMI/SN list generated in Medical ICON is specific to this policy and is to be used as minimum criteria to determine whether a patient needs a mental health disciplinary report form completed." Psychologists record their finding in a Disciplinary Report Form, which the Administrative Law Judge administering the discipline, reviews.

### E. Standards for Solitary Confinement of Mentally Ill Individuals

50. The devastating psychological and physical effects of prolonged solitary confinement are well documented by social and medical scientists: prolonged

solitary confinement - of even fifteen days - causes prisoners significant mental harm and places them at grave risk of future psychological harm.

51. Researchers have demonstrated that prolonged solitary confinement causes a persistent and heightened state of anxiety and nervousness, headaches, insomnia, lethargy or chronic fatigue (including lack of energy and lack of initiative to accomplish tasks), nightmares, heart palpitations, and fear of impending nervous breakdowns.  Other documented effects include obsessive ruminations, confused thought processes, an oversensitivity to stimuli, irrational anger, social withdrawal, hallucinations, violent fantasies, emotional flatness, mood swings, chronic depression, feelings of overall deterioration, as well as suicidal ideation. Individuals in prolonged solitary confinement frequently fear that they will lose control of their anger, and thereby be punished further. Plaintiff suffers from and exhibits these symptoms.

52. In light of these well documented harms, there is an international consensus that prolonged solitary confinement violates international human rights norms and civilized standards of humanity and human dignity.  For example, the Special Rapporteur on Torture for the United Nations concluded solitary confinement of even fifteen days constitutes a human rights violation as torture or degrading treatment/punishment.

53. Research into the psychological effects of solitary confinement support international findings and "[t]here is not a single published study of solitary or

supermax-like confinement lasting for longer than 10 days… that failed to result in negative psychological effects."

54. The negative effects of solitary confinement are compounded for individuals who suffer from mental illness prior to solitary confinement.

55. The American Psychological Association takes the position that "prolonged segregation of adult inmates with serious mental illness, with rare exception, should be avoided due to the potential for harm to such inmates."

56. Inmates with pre-existing mental illness are less able to negotiate the prison environment, and once a mentally ill inmate is in segregation, symptoms of mental illness may prompt further infractions that can extend segregation.

57. Plaintiff suffers from mental illness, including schizophrenia, and experienced these and other negative effects as a result of his confinement in the disciplinary detention ward at ISP.

### IV.   CLAIMS FOR RELIEF

**First Cause of Action: Substantive Due Process Under the Fourteenth Amendment to the U.S. Constitution**

58. Plaintiff reasserts and repleads paragraphs 1 – 57 above as if fully set forth herein.

59. The state assumes a duty under the Fourteenth Amendment to protect inmates from harm and substantial risks of serious harm.

60. Plaintiff has substantive due process rights that include, but are not limited to:

　　a. the right to be free from and protected from physical, psychological, and emotional harm;

    b. the right to necessary medical and psychological treatment, care, and services;

    c. the right not to deteriorate physically, psychologically, or emotionally while in state custody;

    d. the right to be free from discrimination based on protected characteristics, including race and religion;

    e. the right to be free from the use of excessive force; and

    f. the right to be free from substantial risks of the above-mentioned harms.

61. Defendants have practices and policies of failing to provide necessary mental health treatment, subjecting inmates to the inadequate provision of mental health care, the administration of dangerous psychotropic medication without adequate oversight or informed consent, and the unnecessary and inappropriate use of solitary confinement as punishment, as alleged above, in a manner that infringes on their substantive due process rights.

62. Defendants' acts and omissions constitute a substantial departure from accepted professional judgment, practice, and standards with respect to the treatment of inmates.

63. Defendants know of a substantial risk of serious harm likely to be suffered as a result of these practices and policies. Defendants' actions and inaction shock the conscience and are in deliberate indifference to the serious, known health and safety needs of Plaintiff, and create substantial risks of serious harms in violation of Plaintiff's rights under the Fourteenth Amendment.

## Second Cause of Action: Procedural Due Process Under the Fourteenth Amendment to the U.S. Constitution

64. Plaintiff reasserts and repleads paragraphs 1 – 63 above as if fully set forth herein.

65. Plaintiff has procedural due process rights under the Fourteenth Amendment that include, but are not limited to:

    a. the right to written notice of disciplinary violations or charges;

    b. the right to call witnesses at disciplinary or grievance hearings;

    c. the right to assistance in preparing for disciplinary or grievance hearings;

    d. the right to a written statement justifying any guilty finding; and

    e. the right to a fair and impartial decision-maker at any disciplinary or grievance hearing.

66. Defendants have practices and policies of confining inmates to segregation, extending time in segregation, and removing good time earned, as alleged above, in a manner infringing on inmates' procedural due process rights.

67. Defendants' acts and omissions constitute a substantial departure from accepted professional judgment, practice, and standards with respect to the treatment and discipline of inmates.

68. Defendants' acts and omissions constitute atypically harsh conditions of confinement.

## Third Cause of Action: Freedom of Speech and Information Under the First Amendment to the U.S. Constitution

69. Plaintiff reasserts and repleads paragraphs 1 – 68 above as if fully set forth herein.

70. Plaintiff has rights relating to free speech and information under the First Amendment that include, but are not limited to:

    a. the right to visitation with non-inmates;

    b. the right to send and receive mail; and

    c. the right to access reading materials.

71. Defendants have practices and policies of impermissibly interfering with inmates' visitation with family members and limiting inmates' ability to purchase and receive books, and denying inmates access to personal property, as alleged above, in a manner infringing on inmates' First Amendment rights.

72. Defendants' acts and omissions constitute a substantial departure from accepted professional judgment, practice, and standards with respect to the limitation of inmates' freedom of speech and information.

**Fourth Cause of Action: Prohibition on Cruel and Unusual Punishment Under the Eighth Amendment to the U.S. Constitution**

73. Plaintiff reasserts and repleads paragraphs 1 – 72 above as if fully set forth herein.

74. The Eighth Amendment prohibits the imposition of cruel and unusual punishment on inmates, including by exercising deliberate indifference to substantial risks of serious harm, inhumane conditions, and inadequate medical and mental health care.

75. Defendants have a practice and policy of failing to provide necessary mental health treatment, subjecting inmates to the administration of dangerous psychotropic medication without adequate oversight or informed consent, and the unnecessary

use of solitary confinement as inappropriate physical punishment, as alleged above, in a manner that infringes on their Eighth Amendment rights.

76. Defendants know of a substantial risk of serious harm to Plaintiff as a result of these practices and policies. Defendants' actions and inaction are in deliberate indifference to serious, known health and safety needs of residents in violation of Plaintiff's rights under the Eighth Amendment.

**Fifth Cause of Action: The Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.**

77. Plaintiff reasserts and repleads paragraphs 1 – 76 above as if fully set forth herein.

78. Title II of the Americans with Disabilities Act (ADA) provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

79. Plaintiff has mental impairments that substantially limit one or more major life activities, or has a record of such impairments, and therefore has a disability as defined by the ADA, 42 U.S.C. § 12102, and its implementing regulations, 28 C.F.R. § 35.108.

80. Plaintiff is a "qualified individual with disabilities" as defined by the ADA, 42 U.S.C. § 12131(2), and its implementing regulations, 28 C.F.R. § 35.104.

81. Defendant is a public entity as defined by the ADA, 42 U.S.C. § 12131, and its implementing regulations, 28 C.F.R. § 35.104.

82. Defendants violated Plaintiff's rights under Title II of the ADA, 42 U.S.C. § 12131, et seq., and its implementing regulations.

83. Defendants denied Plaintiff the opportunity to participate in programming and services on the basis of their disability.  28 C.F.R. § 35.130(b)(1).

84. Defendants utilized criteria and methods of administration that had the effect of discriminating against Plaintiff on the basis of his disability.   28 C.F.R. § 35.130(b)(3).

85. Defendants failed to make reasonable modifications to their policies, practices, and procedures that are necessary to avoid discrimination against Plaintiff on the basis of his disability. Such reasonable modifications would not fundamentally alter the nature of the Defendants' services, programs, or activities.   28 C.F.R. § 35.130(b)(7).

86. Defendants failed to administer services, programs, and activities for Plaintiff in the most integrated setting appropriate to his needs.  28 C.F.R. § 35.130(d), § 35.152(b)(2).

87. Defendants' inadequate provision of mental health care, the administration of dangerous psychotropic medication without adequate oversight or informed consent, and the unnecessary use of solitary confinement as inappropriate physical punishment do not constitute legitimate safety requirements necessary for the safe operation of Defendants' services, programs, or activities.

## Sixth Cause of Action: Section 504 of the Rehabilitation Act, 29 U.S.C. § 794

88. Plaintiff reasserts and repleads paragraphs 1 – 87 above as if fully set forth herein.

89. Section 504 of the Rehabilitation Act provides in relevant part that "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance." 29 U.S.C. § 794.

90. Plaintiff has mental impairments that substantially limit one or more major life activities, or has a record of such impairments, and therefore has a disability for purposes of the Rehabilitation Act and its implementing regulations, 45 C.F.R. § 84.3(j).

91. Plaintiff is a "qualified individual with disabilities" for purposes of the Rehabilitation Act and its implementing regulations, 45 C.F.R. § 84.3(l)(4).

92. Defendants operates a "program or activity" that receives federal financial assistance for purposes of the Rehabilitation Act, 29 U.S.C. § 794(b), and its implementing regulations, 45 C.F.R. § 84.3.

93. Defendants violated Plaintiff's rights under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and its implementing regulations.

94. Defendants denied Plaintiff the opportunity to participate in programming and services on the basis of his disabilities. 45 C.F.R. § 84.4.

95. Defendants failed to afford Plaintiff aids, benefits, and services in the most integrated setting appropriate to his needs. 45 C.F.R. § 84.4(b)(2).

96. Defendants utilized criteria and methods of administration that have the effect of discriminating against Plaintiff on the basis of his disability, and that defeat or substantially impair the accomplishment of Defendants' objectives with respect to Plaintiff. 45 C.F.R. § 84.4(b)(4).

WHEREFORE, Plaintiff Terrance Sayles requests the Court enter judgment in his favor against Defendants Iowa State Penitentiary and Iowa Department of Corrections in an amount reasonably calculated to compensate him for damages, plus interest, costs, attorneys' fees, and for any and all other relief that the Court and Jury may deem proper under the circumstances.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues triable to a jury, pursuant to Iowa Rule of Civil Procedure 1.902.

      /s/ Benjamin Roberson
Benjamin W. Roberson AT0013277
of
Community Law Office
84 16th Ave SW
Cedar Rapids, IA 52404
Phone: 319-200-7050
Fax: 319-575-6105
Email: ben@communitylawoffice.com

ATTORNEY FOR PLAINTIFF